**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOHN HENRY PAGE,

    Plaintiff,

  vs.

JOHN SCOTT, *et al.*,

    Defendants.

3:07-CV-00287-BES-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

February 17, 2009

    This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#45). Plaintiff opposed (#53) and defendants replied (#54)[1]. The court has thoroughly reviewed the record and the motion and recommends that defendants' motion for summary judgment (#45) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

    Plaintiff John Henry Page ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#40). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right against cruel and unusual punishment while he was incarcerated at Lovelock Correctional Center ("LCC"). *Id*. Plaintiff names as defendants Dr. John Scott, LCC physician; Donna Jenkins, correctional officer at LCC; Donald Poag, nursing director at LCC; Katherine Hegge, nurse at LCC, and Bruce Bannister, NDOC Medical Director. *Id*.

    Plaintiff's complaint contains six counts of alleged violations of plaintiff's Eighth

---

[1] Plaintiff also filed a "reply in opposition to defendants' reply in support of summary judgment (#55). Local Rule 7-2(a)-(c) does not allow any additional replies to be filed without leave of the court. The court did not grant plaintiff leave to file this document. As such, the court disregards plaintiff's reply (#55).

Amendment rights. In count I, plaintiff claims that on February 28, 2007, Dr. Scott refused to cut his plantar warts to relieve his foot pain. *Id*. p. 4. In count II, plaintiff alleges that defendant Jenkins falsely told medical staff that he plays basketball every day, which violated his Eighth Amendment rights. Plaintiff also states that defendant Jenkins has harassed him because she searched his cell on two occasions and went through his legal papers in retaliation for a grievance plaintiff filed against her. *Id*. p. 5. In count III, plaintiff contends that defendant Poag denied his grievance despite Dr. Scott's failure to treat plaintiff, and that defendant Poag did not consult with plaintiff before denying the grievance, which violated plaintiff's Eighth Amendment rights. *Id*. p. 6. In count IV, plaintiff claims that defendant Hegge violated his Eighth Amendment rights by asking him if he wanted to resolve his grievance against Dr. Scott. Plaintiff also states that he discussed the care he received from a specialist outside of LCC, documentation defendant Hegge had about plaintiff playing basketball, and the amount plaintiff was charged for his appointment with Dr. Scott. *Id*. p. 10. In count V, plaintiff asserts that Dr. Bannister denied plaintiff's grievance without consulting plaintiff; therefore, conducting only a "one-sided" investigation, which violated plaintiff's Eighth Amendment rights. *Id*. p. 11. In count VI, plaintiff alleges that Dr. Scott violated plaintiff's Eighth Amendment rights during the surgery he performed on plaintiff's feet on October 18, 2007. Plaintiff contends that Dr. Scott did not give him pain medication before the surgery, cut away "live meat" from plaintiff's foot, and continued to cut into plaintiff's feet despite plaintiff's protests that he was in pain. *Id*. p. 12-13.[2]

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

///

///

---

[2] In his opposition, plaintiff also contends that he is entitled to have counsel appointed (#53). However, the court has already denied plaintiff's motion for assistance of counsel (#23, #25). Therefore, the court does not address this argument further.

## II.  DISCUSSION & ANALYSIS

**A.     Discussion**

### 1.     Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.     Analysis**

Plaintiff alleges that he has plantar warts on both feet, which cause him severe pain.

3

1  Plaintiff sought medical care from defendants on multiple occasions in 2007, but defendants acted
2  with deliberate indifference by repeatedly refusing to treat plaintiff's foot pain, and in doing so
3  violated his Eighth Amendment rights.

### 1. Eleventh Amendment Immunity

Defendants argue that because plaintiff sued defendants Poag and Hegge in their official capacities, counts III and IV must be dismissed because defendants are immune from prosecution pursuant to the Eleventh Amendment (#45). The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit... against one of the United States by Citizens of another State... ." U.S. Const. amend XI. The Supreme Court has held that a suit against a state official in his or her official capacity is not suit against that official, but rather a suit against the official's office; therefore, an official acting in his or her official capacity is not a "person" under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Since the state and its officials are not considered "persons" within the meaning of section 1983, "they cannot be held liable under the statute for money damages." *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003). However, when a state official is sued in his official capacity for prospective injunctive relief, he is considered a "person" for the purposes of section 1983. *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997).

In his second amended complaint, plaintiff names defendants Poag and Hegge in their official capacities, rather than in their individual capacities (#40). Plaintiff requests that the defendants pay him $20,000. *Id*. It is clear that defendants cannot be sued in their official capacities for money damages. *Bank of Lake Tahoe*, 318 F.3d at 918. Therefore, summary judgment is granted for defendants Poag and Hegge. As such, counts III and IV are dismissed.

### 2. Exhaustion of Administrative Remedies

Defendants contend that summary judgment must be granted with respect to count VI because plaintiff failed to exhaust his administrative remedies (#45, p. 9). Defendants assert that in plaintiff's only grievances on the topic of his feet, plaintiff complains that Dr. Scott refused to provide him with medical care. Defendants state that "[t]here are no allegations contained in this

1  grievance regarding Dr. Scott deliberately cutting too deep while removing calluses. Plaintiff has
2  filed no other grievances with respect to his feet." *Id*. p. 10.
3       The Prison Litigation Reform Act of 1996 (the "PLRA") amended 42 U.S.C. § 1997e to
4  provide that "[n]o action shall be brought with respect to prison conditions under section 1983
5  of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
6  correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.
7  § 1997e(a) (2002).
8       Although once within the discretion of the district court, the exhaustion of administrative
9  remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need
10 not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534
11 U.S. 516, 524 (2002), citing *Booth*, 532 U.S. at 739-40, n.5. Even when the prisoner seeks
12 remedies not available in the administrative proceedings, notably money damages, exhaustion is
13 still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the
14 Supreme Court has strictly construed section 1997e(a). *Id.* at 741, n.6 ("[w]e will not read futility
15 or other exceptions into statutory exhaustion requirements where Congress has provided
16 otherwise").
17      Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional
18 requirement. As such, inmates are not required to specifically plead or demonstrate exhaustion
19 in their complaints. *Jones*, 127 S.Ct. at 921. Rather, it is the defendant's responsibility to raise
20 failure to exhaust as an affirmative defense.
21      The NDOC grievance procedure is governed by A.R. 740. In order to exhaust available
22 remedies, A.R. 740 requires as follows: (1) an informal review process; (2) a first level formal
23 written grievance appealing the informal grievance decision to the warden; and (3) a second level
24 grievance appealing the first level grievance decision, which is decided by the Assistant Director
25 of Operations. A.R. 740 requires NDOC officials to respond at each grievance level within a
26 specified time period, beginning from the date of receipt of the inmate's grievance.
27      Defendants submitted two grievances that are related to the allegations made in plaintiff's
28

1  complaint (#64).³ In grievance 2007-19-3708, plaintiff complained that Dr. Scott denied him
2  medical attention for his feet because he was playing basketball. Plaintiff also claimed that his
3  condition was severe enough to require the advice of a specialist, which defendants would not
4  allow. *Id*. exh. A. In grievance 2006-28-22088, plaintiff complained that Drs. Johns and Gettney
5  (who are not defendants here) refused to give him medical shoes to alleviate his foot pain because
6  he was not diabetic, despite the fact that other non-diabetics had been prescribed medical shoes.
7  *Id*. exh. B.

8  Plaintiff has not presented evidence that he actually exhausted his administrative remedies
9  prior to filing the instant action. Plaintiff does not discuss exhaustion or grievances at all in his
10 opposition to the motion for summary judgment, nor does he argue that defendants prevented him
11 from exhausting (#53). Plaintiff has filed grievances related to other matters, as demonstrated by
12 the grievances submitted in #64. Plaintiff failed to exhaust his administrative remedies with
13 regard to his allegations that Dr. Scott intentionally cut his feet despite plaintiff's complaints of
14 pain. As such, summary judgment is granted as to count VI.

15  **3.     Deliberate Indifference to Serious Medical Need**

16  A prison official violates the Eighth Amendment when he acts with "'deliberate
17 indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S.
18 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff's case must satisfy an
19 objective standard – that the deprivation was serious enough to amount to cruel and unusual
20 punishment, and a subjective standard – deliberate indifference. *Id*. at 834; *see also Wilson v.
21 Seiter*, 501 U.S. 294, 297-304 (1991).

22  The objective standard, a "serious medical need," is met if the failure to treat a prisoner's

---

24  ³Defendants submitted the grievances in response to the court's orders (#61 and #63). In
25 response to defendants submission of grievances, plaintiff filed a document styled "plaintiff response
   to defendants submission of evidence of failure to exhaust" (#65). Plaintiff states that he did not file
26 a grievance regarding Dr. Scott's behavior because he was never told that he was required to do so.
   *Id*. However, the court previously informed plaintiff that he would not be given leave to file any
27 additional memoranda with this court because he had already filed an additional reply without leave
   of the court (#61). As such, the court disregards plaintiff's response to defendant's submission of
28 evidence of failure to exhaust (#65).

6

1  condition could result in further significant injury or the "unnecessary and wanton infliction of
2  pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Ninth Circuit's examples of serious
3  medical needs include "the existence of an injury that a reasonable doctor or patient would find
4  important and worthy of comment or treatment; the presence of a medical condition that
5  significantly affects an individual's daily activities; or the existence of chronic and substantial
6  pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

7  The subjective standard of deliberate indifference requires "'more than ordinary lack of
8  due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835, *quoting Whitley v.
9  Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles
10 of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent
11 of recklessly disregarding a substantial risk of serious harm to the inmate. Id. To prove deliberate
12 indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally
13 interfered with medical treatment or that the way prison staff provided medical care indicates
14 deliberate indifference, and that plaintiff sustained damages as a result of such conduct.
15 *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff do not
16 violate the Eighth Amendment simply because their opinion concerning medical treatment
17 conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th
18 Cir. 1981).

**a. Serious Medical Need**

20 Defendants first argue that plaintiff does not suffer from a serious medical need; therefore,
21 he cannot meet the objective standard. Defendants contend that plaintiff has been diagnosed with
22 plantar warts and callus build-up on both feet, but that "even if this condition went entirely
23 untreated, it still would not pose a risk of substantial harm to plaintiff" (#45, p. 11). Further,
24 plaintiff's foot problems do "not appear to have that significant of an effect with respect to
25 plaintiff's daily activities. Plaintiff continues to play basketball, despite the claimed pain he
26 suffers from his foot condition." *Id.* Therefore, because plaintiff does not suffer from a serious
27 medical need and cannot prevail on his Eighth Amendment claims, summary judgment should
28 be granted for defendants. *Id.* Plaintiff's position is that his foot problems are "substantial"

1  because his "calluses can be very painful when in need of being cut down" (#53, p. 2). Plaintiff
2  also contends that the fact that Dr. Scott cut deep enough into his foot to cause him to bleed
3  proves that Dr. Scott found plaintiff's condition to be serious. *Id*. p. 4. Defendants reply that
4  plaintiff does "not suffer from a serious medical need, as evidenced by the fact that his condition
5  have very little effect, if any, on his daily activities (#54, p. 5).

6        Although the court acknowledges that plaintiff's plantar warts cause him some pain, they
7  do not constitute a serious medical need. Plaintiff's condition will not result in significant injury.
8  Plaintiff does not claim that his condition significantly alters his daily activities. Plaintiff is able
9  to ambulate without aid and without a limp (#47, p. 17 (*sealed*)). Plaintiff continues to play
10 basketball at least three times a week. It also does not appear that the delay in plaintiff's treatment
11 resulted in further significant injury. Therefore, plaintiff's foot problems are not a serious medical
12 need.

13                     **b.  Deliberate Indifference**

14       Defendants next contend that even if plaintiff has presented with a serious medical need,
15 defendants have not been deliberately indifferent toward his medical condition (#45, p. 12).
16 Defendants assert that Dr. Scott was not deliberately indifferent when he "declined to provide
17 surgical intervention with respect to plaintiff's feet." *Id*. Rather, Dr. Scott merely chose to
18 prescribe a non-surgical course of treatment by prescribing plaintiff mole skin to use on his feet,
19 and "differences in judgment between an inmate and prison medical personnel regarding
20 appropriate medical diagnosis or treatment fail to state a deliberate indifference claim." *Id*.
21 Plaintiff asserts that defendants delayed his treatment which caused increased pain, and that
22 defendant Jenkins interfered with plaintiff's medical care, which delayed his receipt of treatment
23 for his foot problems (#53, p. 3). Defendants acknowledge the plaintiff's treatment was delayed.
24 However, they contend that "there is no evidence to show the defendants delayed plaintiff's
25 treatment with the intend to cause him pain" (#54, p. 4-5). Further, plaintiff has not "presented
26 evidence that the delay between his treatments caused him, in any way, additional harm." *Id*. p.
27 5.

28       Plaintiff's medical records reveal that he has been treated for plantar warts or calluses

8

1  since at least 2006 (#47 (*sealed*)). Plaintiff's feet have been treated with moleskin and corn
2  patches on numerous occasions. *Id.* p. 19, 22-23. Plaintiff has been given ibuprofen for pain. *Id.*
3  p. 17, 19). Plaintiff's calluses have also been "pared down." *Id.* p. 21. On February 28, 2007,
4  plaintiff requested that he see a specialist because he did not believe the corn patches were
5  working. *Id.* p. 17. However, Dr. Scott decided that he could not "justify an ortho consult"
6  because plaintiff played basketball daily. *Id.* Plaintiff received treatment for unrelated maladies
7  (*Id.* p. 11-18), but was not seen for his foot pain again until October 18, 2007. At that time, Dr.
8  Scott "pared down" plaintiff's plantar warts. *Id.* p. 10. Plaintiff was later transferred to NNCC and
9  received additional treatment for his foot pain, including removal of plantar warts and foot soaks.
10 *Id.* p. 1-5.

11 Plaintiff filed a grievance regarding Dr. Scott's denial of treatment and refusal to refer
12 plaintiff to an orthopedic specialist (#64, exh. A). NDOC officials denied this grievance, and Dr.
13 Bannister denied the grievance at the second level. *Id.* Neither Dr. Scott's nor Dr. Bannister's
14 actions meet the subjective standard of deliberate indifference. Although plaintiff alleges that Dr.
15 Scott delayed some treatment, he does not claim that Dr. Scott denied him all treatment. Plaintiff
16 was treated with moleskin, corn patches, and ibuprofen. Although plaintiff felt that he needed to
17 see a specialist, Dr. Scott decided that the treatment received was sufficient. Prison medical staff
18 do not violate the Eighth Amendment simply because their opinion concerning medical treatment
19 conflicts with the opinion of the inmate-patient. *Franklin*, 662 F.2d at 1344. As such, plaintiff has
20 not demonstrated that Dr. Scott acted with deliberate indifference. Further, he has not
21 demonstrated that by denying his grievance, Dr. Bannister acted with deliberate indifference.
22 Therefore, summary judgment is granted as to counts I and V.

23 **4.  Personal Involvement of Officer Jenkins and Dr. Bannister**

24 Finally, defendants contend that Officer Jenkins and Dr. Bannister were not personally
25 involved in the administration of plaintiff's medical care; therefore, they cannot be held liable
26 under section 1983 (#45, p. 13). In count II, plaintiff alleges that defendant Jenkins violated his
27 Eighth Amendment rights by telling medical staff that plaintiff played basketball (#40, p. 5).
28 However, it does not appear that defendant Jenkins was involved in any way in plaintiff's medical

1  care. Defendant Jenkins is not plaintiff's physician and she has no authority to either grant or
2  withhold medical treatment from plaintiff. Plaintiff does not allege that defendant Jenkins
3  prohibited or prevented him from seeing medical staff. As such, defendant Jenkins was not
4  deliberately indifferent to plaintiff's medical needs. Therefore, summary judgment is granted as
5  to count II.
6       In count V, plaintiff alleges that defendant Dr. Bannister denied plaintiff's grievance
7  without consulting plaintiff, which violated his Eighth Amendment rights (#40, p. 11).
8  Defendants claim that the "mere act of responding to a grievance does not give rise to personal
9  involvement" (#45, p. 13-14). Defendants do not cite to any law to support this claim. However,
10 as stated above, the court already granted summary judgment as to count V because it found that
11 neither Dr. Scott nor Dr. Bannister were deliberately indifferent to plaintiff's medical needs.
12 Therefore, the court need not determine the extent of Dr. Bannister's involvement.

### III. CONCLUSION

14      Based on the foregoing and for good cause appearing, the court concludes that plaintiff
15 has not demonstrated that defendants were deliberately indifferent to plaintiff's serious
16 medical needs. As such, the court recommends that defendants' motion for summary
17 judgment (#45) be **GRANTED** as to all counts.
18      The parties are advised:
19      1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of
20 Practice, the parties may file specific written objections to this report and recommendation
21 within ten days of receipt.  These objections should be entitled "Objections to Magistrate
22 Judge's Report and Recommendation" and should be accompanied by points and authorities
23 for consideration by the District Court.
24      2.    This report and recommendation is not an appealable order and any notice of
25 appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District
26 Court's judgment.
27 ///
28 ///

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#45) be **GRANTED**.

**DATED:** February 17, 2009.

/s/ Valerie P. Cooke
_____
**UNITED STATES MAGISTRATE JUDGE**